# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| LEWIS GENE FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01799-TWP-MJD |
| | ) |
| FCA US LLC, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendant FCA US LLC ("FCA"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Lewis Gene Freeman, *pro se,* ("Freeman") filed a Complaint against FCA, alleging breach of contract and patent infringement. ([Filing No. 1](#).) FCA now seeks to dismiss Freeman's Complaint for failure to state a claim. For the reasons set forth below, the Court **GRANTS** FCA's Motion to Dismiss. ([Filing No. 23](#).)

### I. BACKGROUND

The following facts derived from Freeman's Complaint and the exhibits attached thereto, are not necessarily objectively true; but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Freeman. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Freeman worked at Chrysler Corporation, Kokomo Die Casting Plant ("Chrysler") for thirty-two years as a salary tool and process engineer, before retiring in 1991. During that time period, Freeman patented thirty-three inventions including, a die cast vacuum valve system, filters, as well as vent and filter blocks to be used on Chrysler vehicles. On July 8, 1994, Freeman entered into a licensing agreement with Chrysler, effective May 1, 1994, regarding the die cast vacuum

valve system, the filter, as well as Freeman's vent and filter block patents ("the Agreement"). (Filing No. 1-1 at 2-6.) Freeman and Chrysler amended the Agreement once, on July 17, 1995, to include additional inventions, but they did not make any substantive changes regarding the duties of the parties. *Id.* at 1.

Over the years, Chrysler went through various changes, including a bankruptcy, and in 2009, FCA acquired Chrysler's assets and became the assignee of the Agreement. At some point after FCA acquired Chrysler, Freeman learned that FCA hired outside vendors to produce a certain vehicle component for FCA, known as a casting. On July 2, 2015, Freeman sent a letter to the CEO of FCA, Sergio Marchionne, requesting royalty payments for each casting produced by outside vendors that used Freeman's patents. (Filing No. 1-6.) FCA refused to make royalty payments and informed Freeman that it has been, and continues to be, in compliance with the terms of the Agreement. (Filing No. 1-7.)

On November 16, 2015, Freeman filed a Complaint seeking money damages, asserting that FCA breached the Agreement by utilizing outside vendors to manufacture castings that included Freeman's patents. (Filing No. 1.) The Complaint also alleges that FCA breached the Agreement by failing to seek legal remedies on Freeman's behalf against those who infringed upon his patents. *Id*. Freeman is proceeding *in forma pauperis* ("IFP") (Filing No. 9). FCA now seeks to dismiss Freeman's Complaint, arguing that the Agreement permits FCA to contract with outside vendors to make products for FCA. (Filing No. 23.) FCA also argues that the Agreement does not mandate it to enforce Freeman's patents. *Id.*

## II. LEGAL ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

2

When deciding a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court notes that:

> [I]t is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

> [E]ven pro se litigants . . . must expect to file a legal argument and some supporting authority. A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him.

*Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (citations and quotation marks omitted).

### III.  DISCUSSION

FCA moves to dismiss Freeman's Complaint, arguing that Freeman failed to state a claim upon which relief can be granted. Specifically, FCA asserts that the Agreement permits it to hire outside vendors to make products. FCA also contends that the Agreement does not require it to seek legal remedies against those who infringe upon Freeman's patents.

**A.  Outside Vendors.**

Freeman asserts that FCA breached the Agreement and must make royalty payments because FCA allowed outside vendors to use his patents when making parts for FCA. FCA asks the Court to dismiss Freeman's claim because the Agreement permits FCA to contract with third parties to make its products. In response, Freeman argues that the plain language of the Agreement prohibits FCA from outsourcing to third parties and establishes that FCA may only manufacture parts using Freeman's patents in facilities where FCA controls over fifty percent of the voting stock. Section 3 of the Agreement states:

> FREEMAN grants to CHRYSLER, its controlled companies, affiliates and subsidiaries in which CHRYSLER owns or controls over fifty percent (50%) of the voting stock, a *royalty-free*, irrevocable, world-wide, non-exclusive license to make, *have made*, use and sell products which embody or are produced by the Licensed Inventions for CHRYSLER products and vehicles, including without limitation the repair and service thereof.

([Filing No. 1-1 at 2](#)) (emphasis added). The primary rule of contract construction is to give words their plain and ordinary meaning. *AM General, LLC v. Amour*, 46 N.E.3d 436, 440 (Ind. 2015).

"Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the court] will not construe or look to extrinsic evidence, but will merely apply the contractual provision." *Id.*

The plain language of the Agreement specifically states that FCA—owner of Chrysler's assets—has a royalty-free license. Additionally, when viewing Section 3 of the Agreement as a whole, the language "license to…have made" gives FCA the freedom to contract with third parties. If the Court permits Freeman's reading of the contract, that FCA was limited to making parts in FCA facilities, then the language—license "to make" and "have made"—would be redundant. For these reasons, the Court cannot find that FCA is obligated to make royalty payments under terms of the Agreement. The Court also finds that the "fifty percent (50%) of the voting stock" clause that Freeman relies on, modifies the subsidiaries and affiliates who are granted licenses but does not limit who can make products for FCA. Accordingly, because the Agreement permits FCA to contract with third parties to make its products, the Court **grants** FCA's Motion to dismiss this claim.

B.      **Legal Remedy Against Infringers.**

Freeman also claims that FCA breached the Agreement by failing to assert legal remedies on Freeman's behalf against those who infringed upon Freeman's patents. FCA asks the Court to dismiss this claim because the Agreement establishes that FCA has an option, rather than an obligation, to enforce Freeman's patents. The Court agrees. Section 10 of the Agreement states:

> Upon consultation with FREEMAN, and with FREEMAN'S authorization and consent and in FREEMAN'S name, CHRYSLER *may* sue infringers during the term of any patent that issues from the Applications within a ninety (90) day period after notification by FREEMAN of such infringement. CHRYSLER shall pay the cost and expenses of any suit commenced during the ninety day (90) period, and any recoveries arising from the suit will be shared equally by CHRYSLER and FREEMAN. At the end of the ninety (90) day period FREEMAN has the sole right to sue infringers during the term of any patent that issues from the Applications.

5

> FREEMAN shall pay the cost and expenses of any suit commenced after the ninety day (90) period, and any recoveries arising from the suit will belong to FREEMAN.

([Filing No. 1-1 at 4-5](#)) (emphasis added).

FCA does not have an obligation to enforce Freeman's patents because a plain language interpretation of the term "may," suggests that suing infringers is optional rather than required. The Agreement further makes clear that FCA is not required to take legal action because it establishes that "Freeman has the sole right to sue infringers" if the FCA does not. Accordingly, FCA's Motion to dismiss this claim is **granted**.

## IV.   CONCLUSION

For the reasons stated above, Defendant FCA's Motion to Dismiss ([Filing No. 23](#)) is **GRANTED** and Freeman's Complaint is **dismissed** because he has failed to state a claim upon which relief can be granted. Freeman shall have **through March 22 2017**, in which to show cause why judgment consistent with this Entry should not issue. *See Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013) ("Without at least an opportunity to amend or to respond to an order to show cause, an IFP applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend.").

**SO ORDERED**.

Date: 2/23/2017

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lewis Gene Freeman
1509 Pontiac Drive
Kokomo, Indiana  46902

Paul Stephen Fardy
SWANSON MARTIN & BELL
sfardy@smbtrials.com

Timothy Allon Renfro, Jr.
SWANSON MARTIN & BELL LLP
trenfro@smbtrials.com